IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

**DEBRA SAGE**                                                                                                       **PLAINTIFF**

v.                                                                **CIVIL ACTION NO.: 3:24-cv-392-SA-RP**

**MORTGAGETRADE HOLDING CO., LLC**                                         **DEFENDANT**

**DEFENDANT MORTGAGETRADE HOLDING CO., LLC'S AMENDED MEMORANDUM IN SUPPORT OF ITS RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR SANCTIONS**

Defendant MortgageTrade Holding Co., LLC ("MortgageTrade" or "Defendant") respectfully submits this Amended Memorandum in Support of Its Response in Opposition to Plaintiff's Motion for Sanctions. Plaintiff Debra Sage ("Sage" or "Plaintiff") seeks spoliation sanctions based on speculation and a misapplication of Federal Rule of Civil Procedure ("FED. R. CIV. P.") 37(e). The Motion fails for at least five independent reasons.

First, Plaintiff cannot establish that certain allegedly spoliated electronically stored information ("ESI") ever existed. Several of Plaintiff's own cited authorities make clear that sanctions are inappropriate where a movant merely speculates that potentially responsive ESI must have existed at some point.

Second, to the extent any materials were deleted, they were either privileged, recoverable, immaterial to the claims asserted, and/or other forms of evidence exist that can provide the content of the missing item. Therefore, Plaintiff cannot demonstrate prejudice under Rule 37(e)(1). Specifically, the only document MortgageTrade acknowledges is no longer available—the Culpepper Salary Survey—pertains solely to damages and has no bearing on the essential elements of Plaintiff's claims.

1



Third, Plaintiff cannot satisfy Rule 37(e)(2)'s heightened requirement of an "intent to deprive." The record reflects only imperfect preservation decisions by a non-lawyer at the EEOC stage and the inadvertent omission of a relevant custodian from a later counsel-issued litigation hold—none of which constitutes intentional destruction of evidence.

Fourth, routine deletion pursuant to standard retention policies does not support sanctions under either Rule 37(e). Indeed, one of Plaintiff's own cited authorities recognizes that sanctions are improper where materials are lost through routine processes rather than deliberate misconduct.

Fifth, Plaintiff's Motion for Sanctions ("Plaintiff's Motion") is procedurally defective. It is untimely under the governing discovery deadline and unaccompanied by the Good Faith Certificate required by Uniform Local Rule ("Unif. Loc. R.") 37(a), each of which provides an independent basis for denial. For these reasons, and those set forth below, Plaintiff's Motion should be denied in its entirety.

## FACTUAL BACKGROUND

**A. The March 2024 Litigation Hold**

On March 22, 2024, MortgageTrade received a litigation hold letter in connection with Plaintiff's EEOC charge issued by Plaintiff's then-counsel (the "First Litigation Hold Letter"). *See* ECF No. 62-1, First Litigation Hold Letter. At that time, MortgageTrade's Chief of Human Resources—who is not an attorney and has no legal training—implemented a litigation hold limited to Plaintiff's email account. This decision was based on the contents of the EEOC charge and the First Litigation Hold Letter, neither of which identified witnesses (other than Plaintiff), decisionmakers, or other custodians whose ESI would necessarily be relevant. *See generally id.*

2

MortgageTrade consulted outside counsel during the EEOC Charge. However, counsel did not draft MortgageTrade's Position Statement in response to Sage's EEOC Charge; MortgageTrade's Chief of Human Resources prepared that submission.

MortgageTrade also sought guidance regarding the implementation of the First Litigation Hold Letter. Based on that letter, counsel advised MortgageTrade to preserve the materials that are currently in existence. Because neither the Charge nor the First Litigation Hold Letter identified any additional custodians, MortgageTrade implemented the litigation hold through its Chief of Human Resources and did not place litigation holds on other accounts at that time. It was not recommended that the First Litigation Hold be extended to additional custodians.

### B. The March 2025 Counsel-Issued Litigation Hold

After Plaintiff served her First Amended Complaint, MortgageTrade's counsel issued a litigation hold letter on March 19, 2025 (the "Second Litigation Hold Letter"). Based on the allegations in the Amended Complaint, counsel identified relevant custodians, including Vince Credle ("Credle"), Duncan Chen ("Chen"), Lauren Van Helden ("Van Helden"), Lois Lovelady Rayburn ("Lovelady"), and Adam Grace ("Grace").[1]

Later during discovery, Bill Rayburn ("Rayburn") was identified as a key decisionmaker regarding Plaintiff's transfer to a new role. The failure to update the litigation hold to include Rayburn was an inadvertent administrative omission—not an intentional effort to conceal or destroy evidence.

### C. Implementation and Scope of the Litigation Holds

Russell Barnes ("Barnes"), MortgageTrade's Senior Director of Information Security, testified regarding the implementation and scope of the litigation holds at issue. Barnes did not

---

[1] A litigation hold was not placed on Vince Credle's account because his account no longer existed. His employment with MortgageTrade ended in January 2024.

3

personally receive the First Litigation Hold Letter. **Ex. A**, Deposition of Russell Barnes ("Barnes Dep.") 6:23–26. Instead, his communications regarding preservation instructions came through Steve Perry ("Perry"), MortgageTrade's former Chief of Human Resources. *Id*. at 7:1–4. Barnes testified that in March 2024, Perry instructed him to place a litigation hold on Plaintiff Debra Sage's email account, and that, consistent with that instruction, the hold implemented on March 22, 2024 was limited solely to Ms. Sage's mailbox. *Id*. at 7:14–8:1. Barnes confirmed that no other accounts were requested to be placed on hold at that time. *Id*.

Barnes further testified that the only other litigation hold he was aware of related to this matter occurred in March 2025. *Id.* at 8:18–22. At that time, Perry emailed him directing that a litigation hold be placed on additional custodians' accounts. *Id*. In response, Barnes implemented holds on the email accounts of Lovelady, Grace, Chen, and Van Helden. *Id*. at 8:18–9:1. Barnes testified that Rayburn was not included in the list of custodians provided to him in the excerpt he received, and therefore no litigation hold was placed on Rayburn's account at that time. *Id*. at 9:1–7.

Barnes also explained the technical scope of the litigation holds. MortgageTrade uses Microsoft Office 365, and a litigation hold placed on a user's mailbox preserves emails, Microsoft Teams chats stored within the mailbox, and calendar entries, which may include meeting information. *Id*. at 9:8–10:7, 17:3–13.

### D. MortgageTrade's Deletion Policy

MortgageTrade implements standard email deletion practices. Emails in the deleted items folder are automatically removed after approximately 181 days, and emails in the junk folder are deleted after approximately 30 days. *Id*. at 10: 8–12. Emails stored in a user's inbox or sent folder are not subject to automatic deletion unless the user applies their own deletion settings. *Id*. at

4

10:13–16. Barnes further testified that there are administrative mechanisms available to identify the folders in which emails may reside. *Id*. at 10:18–19. Any emails that were deleted from an account that is subject to litigation hold are still retrievable. *Id*. at 13:3–8.

## **LEGAL STANDARD**

FED. R. CIV. P. 37(e)(1) provides that, if ESI that should have been preserved in anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it and cannot be restored or replaced through additional discovery, the court may, upon a finding of prejudice to another party, order measures no greater than necessary to cure the prejudice.

If the Court finds that the party acted with the intent to deprive another party of the information's use in the litigation, it may: "(A) presume that the lost information was unfavorable to the party; (B) instruct the jury that it may or must presume the information was unfavorable to the party; or (C) dismiss the action or enter a default judgment." FED. R. CIV. P. 37 (e)(2).

The Fifth Circuit has held that "[b]ad faith, in the context of spoliation, generally means destruction for the purpose of hiding adverse evidence," *Guzman v. Jones*, 804 F.3d 707, 713 (5th Cir. 2015), and that "[m]ere negligence is not enough to warrant an instruction on spoliation[.]" *Russell v. Univ. of Tex. of Permian Basin*, 234 F. App'x 195, 208 (5th Cir. 2007) (cleaned up). Those standards overlap with Rule 37(e)(2)'s requirement of an "intent to deprive another party of the information's use in the litigation." *See Jim S. Adler, P.C. v. McNeil Consultants, LLC*, No. 3:19-CV-2025-K-BN, 2023 WL 2699511, at *12 n. 5 (N.D. Tex. Feb. 15, 2023); *see also Eagan v. Walgreen Co.*, No. 21-20352, 2022 WL 683636, at *3 (5th Cir. Mar. 8, 2022). "The party seeking the spoliation sanction bears the burden of proof." *Castro v. Wal-Mart Real Est. Bus. Tr.,* 645 F. Supp. 3d 638, 646 (W.D. Tex. 2022).

5

**ARGUMENT**

I.  **Plaintiff Cannot Satisfy FED. R. CIV. P. 37(e)'s Threshold Requirements or Show Prejudice.**

Plaintiff's Motion rests on the premise that MortgageTrade was required, as of March 22, 2024, to place potential witnesses' ESI on litigation hold. But at the EEOC stage, neither the charge nor the First Litigation Hold Letter identified witnesses (other than the Plaintiff) or suggested that the ESI of additional custodians would be relevant. *See* ECF No. 62-1, First Litigation Hold Letter; *see also* ECF No. 1-1, Plaintiff's EEOC Charge. Under those circumstances, it was reasonable for a non-lawyer HR professional to preserve only Plaintiff's email account. It was not recommended that the First Litigation Hold be extended to other custodians.

After Plaintiff filed her Amended Complaint, MortgageTrade's counsel issued the Second Litigation Hold Letter identifying relevant custodians based on the allegations in that pleading. Rayburn was not named in Plaintiff's Amended Complaint.

Later during discovery, it was learned that Rayburn was a key decisionmaker in Sage's transfer. However, counsel inadvertently failed to update the Second Litigation Hold Letter to include Rayburn.

Even assuming, without conceding, that a broader litigation hold should have been implemented as early as March 2024 on multiple custodians, Plaintiff still cannot satisfy the remaining requirements of FED. R. CIV. P. 37(e)(1) or (e)(2).

    A.  **Plaintiff Cannot Prove That Certain Allegedly Spoliated ESI Ever Existed.**

A fatal flaw in Plaintiff's Motion is her failure to establish that certain allegedly spoliated materials ever existed. Notably, several of Plaintiff's own cited authorities make clear that sanctions are inappropriate where the movant merely speculates that responsive ESI must have existed. *See Hoffer v. Tellone,* 128 F.4th 433, 436–37 (2d Cir. 2025) (affirming denial of adverse

6

inference instruction where there was no clear evidence that alleged spoliated materials existed); *Applebaum v. Target Corp.,* 831 F.3d 740, 744–46 (6th Cir. 2016) (affirming denial of adverse inference instruction where, among other things, plaintiff offered no evidence the records even existed).

Those cases align with Rule 37(e), which places the burden on the moving party to demonstrate existence of allegedly lost ESI—a burden Plaintiff cannot satisfy here. *Castro,* 645 F. Supp. 3d at 646.

### i. Alleged Decisional Emails or Messages

Plaintiff asserts that emails or messages between Rayburn and Lovelady detailing the reason for Sage's transfer must exist. Yet, both Rayburn and Lovelady testified unequivocally that they discussed the rationale for Sage's transfer in person. Because they are married and see each other daily, they noted there was little need to communicate about the matter via email or text. *See* ECF No. 60-5, Deposition of Bill Rayburn ("Rayburn Dep.") at 18:1–20; *see also* ECF No. 60-13, Deposition of Lois Lovelady Rayburn ("Lovelady Dep.") at 32:1–15. Rayburn further advised Plaintiff's counsel that he would conduct a search to determine whether any documents reflecting those discussions even existed. *See* ECF No. 60-5, Rayburn Dep. at 18:1–7. And after doing so, Rayburn confirms that none exist. **Ex. B**, Affidavit of William Beecher Rayburn ("Rayburn's Affidavit"). As one of Plaintiff's own cited authorities provides, a party cannot be forced to produce documents that never existed. *Hobson v. Harper*, No. 2:22-CV-02088-JAD-MDC, 2025 WL 1905594, at *2-3 (D. Nev. July 9, 2025). Likewise, a party should not be sanctioned for failing to produce documents that never existed.

7

### ii. Alleged Microsoft Teams Messages

Plaintiff speculates that Teams messages documenting the reassignment of her duties to colleagues must have existed, but she identifies no evidence supporting that claim. She further asserts that MortgageTrade maintains "auto-deletion policies for Microsoft Teams communications which retain[] messages for only one to two weeks," ECF No. 63 at p. 2, citing Barnes' deposition. But Barnes gave no such testimony concerning any retention or deletion period for Teams communications. *See generally* **Ex. A**, Barnes Dep.

In any event, the record establishes that Plaintiff's former duties were divided among both male and female colleagues. *See* ECF No. 60-5, Rayburn Dep. at 26:20–27:7. Therefore, Plaintiff is not prejudiced by any alleged loss of speculative Teams communications because Plaintiff can rely on deposition testimony to show the distribution of her former job duties. *In re Ethicon, Inc. Pelvic Repair Sys. Prod. Liab. Litig.*, 299 F.R.D. 502, 523 (S.D.W. Va. 2014) (finding that prejudice less acute where extrinsic evidence—such as deposition testimony, documents, or circumstantial evidence—can substitute for the allegedly spoliated evidence).

**B. Furthermore, Plaintiff is not prejudiced by the deletion of any calendar entries, meeting invitations, the Culpepper Salary Survey, or any privileged emails.**

### i. Calendar Entries and Meeting Invitations

Plaintiff argues that alleged missing calendar entries would show she was excluded from meetings based on gender. For context, Plaintiff's retaliation claim centers on a January 2024 meeting with Lovelady, during which Plaintiff complained, among other things, that she had been excluded from meetings by Chen. *See* ECF No. 60-2, Deposition of Debra Sage ("Sage Dep.") at 203:16–206:11, 263:21–25; *see also* ECF No. 60-13, Lovelady Dep. at 10:7–11:23

8

The record confirms that any misunderstanding regarding Plaintiff's participation in those meetings was promptly corrected in 2023, when former MortgageTrade COO Vince Credle informed Chen that Sage needed to be included in certain meetings after Chen indicated that he believed her presence was unnecessary. *See* **Ex. C**, Deposition of Vincent Credle ("Credle Dep.") at 48:2–50:9; *see also* ECF No. 60-13, Lovelady Dep. at 10:7–11:23. After that clarification, Plaintiff was included in those meetings going forward and made no further complaints. *See* **Ex. C**, Credle Dep. at 48:24–50:9. Thus, the evidence forecloses any inference that the initial exclusion was discriminatory.

In any event, to the extent Plaintiff's retaliation claim survives, Plaintiff may testify at trial, as she already has, to her own perceptions of exclusion. Therefore, the loss of any speculative calendar entries does not prejudice Plaintiff. *In re Ethicon, Inc. Pelvic Repair Sys. Prod. Liab. Litig.*, 299 F.R.D. at 523.

### ii.  The Culpepper Salary Survey

The only document Plaintiff identifies that existed and is now unavailable is the Culpepper Salary Survey, which reflected how MortgageTrade benchmarked Plaintiff's compensation in her new role. But its loss does not prejudice Plaintiff because it is not relevant to any essential element of her discrimination or retaliation claims. *Id.* at 522 ("Spoliation of evidence causes prejudice when, as a result of the spoliation, the party claiming spoliation cannot present evidence *essential to its underlying claim*.") (emphasis added) (internal quotation marks and citation omitted). Plaintiff's discrimination and retaliation claims turn on why she was transferred—not how her compensation was benchmarked afterward, once she accepted the new role.

At most, the survey relates to damages, and its substance can be established through testimony. *See* ECF No. 60-13, Lovelady Dep. at 19:18–20:1. Where alternative sources exist, any

9

prejudice is minimal and insufficient to support sanctions. *In re Ethicon, Inc. Pelvic Repair Sys. Prod. Liab. Litig.*, 299 F.R.D. at 523.

### iii. Privileged Emails Identified in the Deletion Report

Plaintiff relies heavily on a deletion report covering December 18, 2024, through March 19, 2025, suggesting it evidences intentional misconduct by MortgageTrade. But the only emails in the deletion report that Plaintiff identifies as relevant communications are emails between Rayburn and Lovelady that are protected by the work-product doctrine, as reflected in MortgageTrade's privilege log. *See* ECF No. 62-5, MortgageTrade's Second Amended Privilege Log.

Notably, these emails are not lost and remain recoverable. **Ex. A**, Barnes Dep. at 13:3–8. Moreover, because the communications are privileged, Plaintiff could never have used them to prove her claims. Accordingly, the deletion of these privileged emails does not constitute spoliation under Rule 37(e), as it remains recoverable and could not have been used in litigation in any event. Nor can Plaintiff establish any inference of intent to deprive, because the deletion of information that is unusable in litigation cannot reasonably be viewed as an effort to conceal evidence. *See CBF Industria de Gusa S/A v. AMCI Holdings, Inc.*, No. 13CV2581PKCJLC, 2021 WL 4190628, at *10 (S.D.N.Y. Aug. 18, 2021) (providing that absent a showing of intent to deprive another party of the information's use in the litigation, sanctions are not available).

Plaintiff attempts to persuade the Court to infer that the deletion of privileged litigation communications between Rayburn and Lovelady means that written communications reflecting their discussions about Plaintiff's transfer must also have existed and are now lost. Notably, the documents Plaintiff's counsel questioned both witnesses about were communications reflecting their discussions regarding Plaintiff's transfer—not litigation-related communications. *See* ECF

No. 60-5, Rayburn Dep. at 18:1–20; *see also* ECF No. 60-13, Lovelady Dep. at 32:1–15. And as confirmed by both witnesses, no such documents exist. *Id.*; *see also* **Ex. B**, Rayburn's Affidavit. Speculation that such documents must have existed is precisely the kind of conjecture that Plaintiff's own cited authority recognizes cannot support spoliation sanctions. *Curcio v. Roosevelt Union Free Sch. Dist.*, 283 F.R.D. 102, 121–122 (E.D.N.Y. 2012) (noting it was troubling that plaintiff claimed evidence must have existed when the record showed otherwise, and concluding sanctions were not warranted).[2]

### iv. Violation of Title VII Regulations

Plaintiff cites *EEOC v. JetStream*, 878 F.3d 960, 961–62 (10th Cir. 2017), for the proposition that MortgageTrade was required to preserve all personnel records pursuant to Title VII regulations. Notably, *JetStream* involved the loss of existing documents—an Excel spreadsheet and handwritten notes—directly documenting the adverse employment action in a failure-to-hire case. *Id*.

Here, by contrast, there are no documents memorializing the decision to transfer Plaintiff other than the job scope adjustment. *See* ECF No. 60-12, Job Scope Adjustment. All personnel records relating to Plaintiff—including the job scope adjustment—have been produced. Furthermore, Plaintiff identifies no missing personnel record.

## II. Plaintiff Cannot Establish Intent to Deprive Under Rule 37(e)(2).

Finally, Plaintiff's request for adverse jury instructions fails as a matter of law because there is no evidence—direct or circumstantial—of an intent to deprive.

---

[2] Furthermore, Plaintiff asserts that Defendant was not truthful in stating that the parties were not aware of any discoverable deleted ESI. *See* ECF No. 63 at 7. At the time of the Case Management Order, MortgageTrade was not aware of any deleted discoverable ESI. Plaintiff still has not shown that any ESI relevant to her claims has been deleted—much less that any such deletion caused prejudice or was done with an intent to deprive under Rule 37(e).

At most, Plaintiff identifies imperfect preservation decisions by a non-lawyer before litigation commenced, which may have resulted in emails, communications, calendar entries, or meeting invitations being deleted pursuant to MortgageTrade's routine deletion policy. Those decisions, made based on the limited information available at the time and without any instruction to expand the hold to additional custodians, do not establish intent to deprive. In addition, the failure to extend the litigation hold to include Rayburn was an inadvertent oversight by MortgageTrade's counsel—not an intentional act.

However, routine deletions pursuant to standard retention policies do not constitute bad faith or an intent to deprive under Rule 37(e)(2). Typically, courts do not draw an inference of bad faith when the documents are destroyed under a routine policy. *See Vick v. Tex. Employment Comm'n*, 514 F.2d 734, 737 (5th Cir. 1975). "[T]he mere *potential* loss of evidence as a result of failure to properly institute and effectuate a litigation hold does not rise to the level of bad faith and willful misconduct necessary to support spoliation sanctions under the court's inherent power." *Lou v. Lopinto*, No. CV 21-80, 2022 WL 16685539, at *8 (E.D. La. Nov. 2, 2022).

Even one of Plaintiff's own cited authorities recognize that sanctions are improper where records were lost through routine processes rather than deliberate misconduct. *United States v. Laurent*, 607 F.3d 895, 899–903 (1st Cir. 2010) (holding that loss of video showing drug deal did not warrant dismissal where overwhelming evidence supported conviction and deletion was pursuant to routine policy, negating bad faith).

**III.     Plaintiff's Motion is Procedurally Defective and Should Be Denied.**

Not only has Plaintiff failed to establish that sanctions are warranted under FED. R. CIV. P. 37(e), but Plaintiff's Motion is both untimely and unaccompanied by a Good Faith Certificate as required by the Uniform Local Rules.

As the Northern District of Mississippi has held, a motion for discovery sanctions constitutes a discovery motion. *Tutor v. Pontotoc Cnty.*, No. 3:08-CV-16-M-A, 2009 WL 10675477, at *2 (N.D. Miss. Mar. 23, 2009). Accordingly, under UNIF. LOC. R. 37(a), Plaintiff was required to file a Good Faith Certificate with her motion. She did not do so. For this reason alone, her Motion should be denied. *Id.*

Plaintiff's Motion is also untimely. The discovery deadline in this case was December 15, 2025.[3] *See* ECF No. 39, Order Extending Deadlines. UNIF. LOC. R. 7(b)(2)(C) provides that "[a] party must file a discovery motion sufficiently in advance of the discovery deadline to allow response to the motion, ruling by the court, and time to effectuate the court's order before the discovery deadline." Plaintiff filed her Motion on January 5, 2026—twenty-one days after discovery closed. Because the Motion was filed after the discovery deadline and could not have been adjudicated before its expiration, it is untimely and should be denied. *Tutor*, 2009 WL 10675477, at *2.

## CONCLUSION

For the foregoing reasons, MortgageTrade respectfully requests that the Court deny Plaintiff's Motion for Sanctions in its entirety.

**RESPECTFULLY SUBMITTED**, this the 21st day of January, 2026.

*/s/ Whitney J. Jackson*
J. William Manuel (MSB #9891)
Whitney J. Jackson (MSB #106120)
Emily C. Stanfield (MSB #106864)
Bradley Arant Boult Cummings LLP
One Jackson Place
188 E. Capitol Street, Suite 1000
Jackson, Mississippi 39201
Telephone: (601) 948–8000
Facsimile:  (601) 948–3000

---

[3] The actual deadline was December 14, 2025. However, because that date fell on a Sunday, the operative deadline was December 15, 2025.

13

> wmanuel@bradley.com
> wjackson@bradley.com
> estanfield@bradley.com
> *Attorneys for MortgageTrade Holding Co., LLC d/b/a mTrade*

## **CERTIFICATE OF SERVICE**

I hereby certify that I have on this date served the foregoing via ECF filing system, which will provide notice to all counsel of record.

This the 21st day of January, 2026.

> */s/ Whitney J. Jackson*
> Whitney J. Jackson